UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK BRACKETT, et al., | No. 2:23-cv-00555-DJC-AC |
| Plaintiffs, | |
| v. | ORDER |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, et al., | |
| Defendants. | |

    Pending before the Court is Defendant Travelers Property Casualty Company of America's Motion for Summary Judgment or Partial Motion for Summary Judgment. Plaintiffs Jack Brackett and Michelle Owens brought the instant action against Defendant alleging a breach of the implied covenant of good faith and fair dealing and seeking punitive damages. For the reasons discussed below, the Court DENIES Defendant's Motion for Summary Judgment.

## BACKGROUND

    Defendant Travelers Insurance seeks summary judgment on Plaintiffs Jack Brackett and Michelle Owens' claim for breach of the implied covenant of good faith and fair dealing in its handling of Brackett's UIM claim. (MSJ (ECF No. 23).)

////

In August 2017, Brackett was in a high-speed rollover car accident while driving a company truck for his employer, La Tortilla Factory. (Joint Stipulated Facts ("JF") (ECF No. 23-3) No. 2.) Brackett was seriously injured and suffered from a range of orthopedic, neurological, and psychological injuries. (*See id.* Nos. 3–4.) Brackett was not at fault for the accident. (Plaintiffs' Statement of Additional Facts ("PF") (ECF No. 24–2) No. 2.)

At the time of the accident, Defendant insured La Tortilla Factory under a commercial automobile liability policy. (*Id.* No. 1.) This policy included a one million dollar uninsured/underinsured motorist limit for accidents. (*Id.*) As an employee of La Tortilla Factory, Brackett was covered by the UIM policy. (*See id.*) To trigger coverage under the UIM policy, an insured had to exhaust the policy limit of the at-fault driver's insurance and conclude workers' compensation claims. (Policy (ECF No. 23–1, Ex. 1) at 28–29.) The insurer gets a credit for payments the insured receives from the at-fault driver and payments through workers' compensation. (*Id.*)

Following the accident, Brackett sought to exhaust the at-fault drivers' policy, (*See* Compl. (ECF No. 1-2, Ex. A) ¶ 9) and opened a workers' compensation claim (JF No. 3). As part of the claim, Brackett was examined by several medical professionals and treated for his various injuries. (*Id.* No. 4.) However, in September 2017, Brackett's attorney revoked medical authorizations claiming a right of privacy. (*Id.* No. 5.)

In January 2018, Brackett's attorney made a request for UIM coverage. (*Id.* No. 6.) That year, Defendant sought medical authorization in an effort to obtain more information. (*Id.* Nos. 7–8.) However, Brackett did not return the requests. (*Id.*) Defendant continued to seek updates about Brackett's injuries from 2018 through 2020. (Defendant's Statement of Undisputed Facts ("DF") (ECF No. 23-2) at 1.) Defendant also sought updates about Brackett's treatment, injuries, medical bills, lost wages, and the overall status of the workers' compensation claim. (*Id.* No. 3.) However, under the Policy, UIM coverage was not triggered at this time because the

workers' compensation claim was ongoing, and there had not yet been a settlement with the at-fault drivers' insurer.

In March 2020, Brackett sent Defendant a demand letter stating (1) that he settled with the at-fault driver's insurer for the $25,000 policy limit; and (2) that he sought $984,500 in UIM benefits or to submit the claim to arbitration. (JF No. 13.) At this point, however, the workers' compensation claim was ongoing. (*See* JF No. 14.) Neither party disputes that Brackett "sent medical records with the demand." (MSJ at 8.) In late 2021, Defendant subpoenaed additional medical records from Brackett's providers and workers' compensation file, and requested medical authorization from Brackett for certain providers, which was signed. (Decl. of Jay C. Patterson (ECF No. 23-6) ¶¶ 14,18.)

The workers' compensation claim settled in February 2021 for a sum of $120,000. (JF No. 15–16.) This included $40,536 for lost wages, $63,055 for medical expenses and $16,000 in attorneys' fees. (*Id*; ECF No. 23-7, Ex. 5.) Brackett also received over $103,000 in lost wage payments making the total amount $223,591. (MSJ at 9.) Thus, the reduced available amount under the UIM policy was $817,416. (JF No. 30.)

Brackett did not have medical treatment after May 2020 and his total medical expenses were $49,326. (*Id*. Nos. 9–10.) However, he stated that he may need medical treatment in the future. (ECF No. 23, Ex. 12 at 89:7–90:19.) As part of the workers compensation Compromise and Release, Brackett was deemed 45 percent disabled from working.[1] (ECF No. 23-7, Ex. 5 at 8.)

Following the demand letter, the parties selected an arbitrator in May 2021 and Brackett agreed to an arbitration date in August 2022. (JF Nos. 17–18.) Brackett alleges that the arbitration date selection was not a unilateral decision, but one made

---

[1] Although Defendant argues that the UIM division is not involved in the workers' compensation claim or release, Plaintiffs allege that on March 16, 2021, Brackett's counsel sent the Workers' Compensation and Release to Travelers' UIM counsel. (See ECF No. 24-3, Ex. 11.)

3

at the earliest convenience for all the involved parties. (Opp'n (ECF No. 24) at 20; (ECF No. 24-2, Exs. 13-15).) A formal demand for arbitration was made to JAMS in August 2021, which included Plaintiffs' claims – including Michelle Owens' claim for loss of consortium. (PF No. 20.) Defendant sought to settle the claim before arbitration – first for $60,000 in May 2021, (*see id.,*) and then for $210,000 in July 2021 (JF No. 20). The Defendant does not explain the basis for the $60,000 offer, (PF No. 26), and the adjusted $210,000 offer included no compensation for lost future wages (PF No. 27). Defendant valued the claim based on Brackett's injuries and ongoing pain while also considering that he last saw a doctor for treatment before February 2021, and appeared to have been working again. Brackett rejected both offers. (JF No. 21; Opp'n at 6.)

In April 2022, Brackett was deposed and Defendant issued interrogatories. (JF No. 22.) Defendant also retained independent medical experts to evaluate Brackett's wellbeing, and propounded discovery to gain more records. (*See id.* at 23-26.) These new evaluations did not change the Defendant's valuation of the claim.

In August 2022, the arbitration took place. (*Id.* No. 27.) During the arbitration, Brackett brought in experts to discuss his future surgery needs, lost wages, and more. After the conclusion of the arbitration hearing, but before the issuance of the final award, Defendant offered the full amount available under the UIM policy. (*Id.* No. 28.) By December 2022, Defendant paid $817,416.39. (*Id.* at 29.) The final arbitration award provided over five million dollars to Brackett (PF No. 40) and a credit of $182,583.61 for Defendant (JF No. 30). The arbitrator ultimately adjusted the award to match the remaining policy balance. (PF No. 48.)

The Defendant now moves for summary judgment arguing that any undue delays resulted from Plaintiffs' own actions and that a genuine dispute over the value of the claim existed. The Plaintiffs oppose the Motion contending that Defendant's

handling of the claim was unreasonable. Defendant provided a Reply.[2] The Court heard Oral Argument on March 20, 2025, and the matter was submitted.

## LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portion of the record "which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party to "establish that there is a genuine issue of material fact. . . . " *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585 (1986). The parties must "(A) cit[e] to particular parts of materials in the record. . . or (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). When determining a motion for summary judgment, "the inferences to be drawn from the underlying facts. . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co.,* 475 U.S. at 587 (citation omitted). Ultimately, for the moving party to succeed, the Court must conclude that no rational trier of fact could find for the opposing party. *See id.*

---

[2] The Parties dispute whether Plaintiff Counsel's attached Declaration is acceptable. Pursuant to a Joint Stipulation Agreement, (ECF No. 15) this Court ordered that Anthony Ontiveros would not testify at trial, nor offer evidence via declaration or affidavit in this case regarding events, occurrences, or facts pre-dating the filing of this lawsuit or any facts of any nature as probative of liability or damages against Defendant in this case. There was an exception, however, for the authentication of documents. Given the Court's order, the Court will only rely on Ontiveros's Declaration to the extent that it serves authentication purposes. Moving forward, the Court cautions Ontiveros to stay within the bounds of the stipulation.

1    A court may consider evidence as long as it is "admissible at trial." *Fraser v.*
2    *Goodale,* 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on
3    the evidence's form, but its content. *Block v. City of L.A.,* 253 F.3d 410, 418-19 (9th
4    Cir. 2001) (citation omitted). The party seeking admission of evidence "bears the
5    burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.,* 284 F.3d 999, 1004
6    (9th Cir. 2002). If the opposing party objects to the proposed evidence, the party
7    seeking admission must direct the court to "authenticating documents, deposition
8    testimony bearing on attribution, hearsay exceptions and exemptions, or other
9    evidentiary principles under which the evidence in question could be deemed
10   admissible. . . ." *In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 385-86 (9th Cir. 2010).
11   But if evidence falls short of the formalities of Rule 56, a district court still may exercise
12   its discretion "to be somewhat lenient." *Sch. Dist. No. 1J, Multnomah Cnty., Or. V.*
13   *ACandS, Inc.,* 5 F.3d 1255, 1261 (9th Cir. 1993) (collecting cases).

14                               **DISCUSSION**
15        **I.    Bad Faith Claim**
16        The law implies in every contract, including insurance policies, a covenant of
17   good faith and fair dealing. *Wilson v. 21st Century Ins. Co.,* 42 Cal. 4th 713, 720
18   (2007). "When benefits are due to an insured, delayed payment based on inadequate
19   or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the
20   amounts legitimately payable, and numerous other tactics may breach the implied
21   covenant[.]" *Duncan v. State Farm Mut. Auto. Ins. Co.,* 494 F. Supp. 3d 742, 752-53
22   (E.D. Cal. 2020) (citing *Waller v. Truck Ins. Exch. Inc.,* 11 Cal. 4th 1, 36 (1995)). There
23   are at least two requirements to establish breach of the implied covenant: (1) benefits
24   due under the policy must have been withheld; and (2) the reason for withholding
25   benefits must have been unreasonable or without proper cause. *Mosley v. Pac.*
26   *Specialty Ins. Co.,* 49 Cal. App. 5th 417, 435 (2020) (citation omitted).
27        Thus, even where benefits are due under a policy, withholding them is not bad
28   faith "if the insurer conducts a thorough and fair investigation, after which there

remained a genuine dispute as to coverage liability." *Kerrigan v. Allstate Ins. Co.,* 543 F. Supp. 3d 843, 853 (C.D. Cal. 2021), *aff'd,* No. 21-55730, 20222 WL 14476372 (9th Cir. Oct. 25, 2022) (citation and quotations omitted). In determining whether a genuine dispute exists, the court need not determine which party is right, but rather, whether a reasonable and legitimate dispute actually existed. *See Chateau Chamberay Homeowners Assn. v. Associated Intern. Ins. Co.,* 90 Cal. App. 4th 335, 347 (2001) (cleaned up). Bad faith exists where the defendant acted by a "conscious or deliberate act." *Id.* at 346. Although the reasonableness of an insurer's claims-handling is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence. *Id.*

### A. Undue Delay

Defendant contends that it did not unreasonably delay payment of Brackett's claim, and that any delay that occurred was the result of Plaintiffs' behavior. Specifically, Defendant alleges that Brackett failed to return medical authorization forms, selected a delayed arbitration date, and "ambushed" Defendants with claims at the arbitration. Plaintiffs argue that triable issues of fact exist as to all of these allegations.

"While an insurance company has no obligation under the implied covenant of good faith and fair dealing to pay every claim its insured makes, the insurer cannot deny the claim without fully investigating the grounds for its denial." *Wilson,* 42 Cal. 4th at 721–22 (citation and quotation omitted). The insurer must fully inquire into possible bases that might support the insured's claim before denying it. *Id.* at 722 (citation and internal quotations omitted). The denial of a claim on a basis unfounded in the facts known to the insurer, or contradicted by those facts, may be deemed unreasonable. *Id.* However, there can be no unreasonable delay "until the insurer receives adequate information to process the claim and reach an agreement with the insureds." *Globe Indemn. Co., v. Superior Court,* 6 Cal. App. 4th 725, 732 (1992).

### 1. Medical Authorization

Defendant contends that Brackett's failure to provide the statutorily required medical authorization precludes his bad faith claims as a matter of law. Under the California Insurance Code, an insured must provide the medical treatment record release within 15 days of the insurer's request. Cal. Ins. Code § 11580.2(*o*). If the insured fails to comply with the subsection's requirements, the arbitration proceeding shall be stayed for at least 30 days after compliance by the insured. *Id.* Additionally, the Insurance Code provides that UIM coverage does not apply until the offending party's relevant insurance policy limits have been exhausted and that proof of payment has been submitted to the insurer. Cal. Ins. Code § 11580.2(p)(3). Further, an insurer has no duty to pay benefits during the pendency of a workers compensation claim. *Rangel v. Interinsurance Exch.,* 4 Cal. 4th 1, 17 (1992). Thus, a failure to provide the required medical authorization may not render an insurer liable for unreasonably delaying the claim or paying benefits.

The facts regarding the medical authorization are as follows. In January 2018, Defendant received an email from Brackett's attorney stating that he was requesting UIM coverage. (*See* JF No. 6.) Defendant acknowledged the claim and requested more information. (*Id.* No. 7.) In 2018, Defendant sent medical authorization forms, but Brackett did not return them. (*Id.* No. 8.) However, at this point, Brackett's request appeared to be premature because he had an ongoing workers compensation claim and had not yet shown that he had exhausted the at-fault driver's policy. Cal. Ins. Code § 11580.2(p)(3). In March 2020, Brackett's attorney sent a letter to Defendant stating that Brackett settled with the at-fault driver's insurer for the policy limit and demanding that $984,500 of the UIM benefits be paid, or to submit the claim to arbitration. (JF No. 13.) Along with the demand, Plaintiffs sent medical records to Defendant. (*See* ECF No. 23-5 ¶ 40; Opp'n at 18.) Plaintiffs' workers compensation claim settled in February 2021. (JF No. 15.) In late 2021, Defendant's arbitration attorney propounded discovery and served subpoenas on Brackett's medical

providers to obtain additional records. (*Id.* No. 22.) Additionally, in November and December 2021, Defendant sought medical authorizations from more of Brackett's providers, which he signed. (Decl. of Jay Patterson ¶ 18; ECF No. 23-7, Ex. 4 at 52–53.)

Defendant predominantly relies on *Myers v. Allstate Indemnity Co.,* to support its claim that Plaintiffs' failure to return the medical authorization caused the undue delay. 109 F. Supp. 3d 1331 (C.D. Cal. 2015). There, the plaintiff argued that the basis for her bad faith claim was not whether a genuine dispute over coverage existed, but that the insurance company unreasonably delayed conducting its investigation and setting up the arbitration. *Id.* at 1336. In finding for the insurance company, the district court explained that it was undisputed that the plaintiff's counsel received a medical records request less than a month after the accident, but plaintiff's counsel failed to return it. *Id.* at 1337. Thus, the delay in arbitration, and ultimately any delay in receiving the benefits, was due to the failure to submit the required form. *Id.* at 1337–38.

Unlike the circumstances in *Myers*, Brackett is not alleged to have never responded to the medical authorization. Instead, he is alleged to have only replied to the medical authorization sought after the UIM claim was no longer premature under the Insurance Code. Here, Plaintiff would have been eligible for UIM coverage beginning in February 2021 and responded to Defendant's medical authorization requests made following that date. Given that the Insurance Code does not provide UIM coverage until the exhaustion of the liable party's insurance and that there is no duty to pay until the resolution of the workers compensation claim, Brackett's failure to return the early authorizations is not dispositive of his claim.[3] While the jury may

---

[3] Defendant argues that nothing in section 11580.2(*o*) allows an insured to make a UIM claim and ignore a medial authorization request until arbitration is demanded. However, under section 11580.2(p)(3), it does not appear that UIM coverage applied until the claim with the negligent driver was exhausted and proof was submitted to the insurer providing UIM coverage. Cal. Ins. Code. § 11580.2(p)(3). To the extent that the two statutory sections contradict, section 11580.2(p) controls.

certainly consider the fact that Brackett failed to respond to the earlier request for medical authorization in assessing whether and to what extent Defendant unreasonably delayed investigating Plaintiff's claim, Plaintiff's claim is not barred by section 11580.2 of the Insurance Code or under the logic of *Myers*. Thus, the Court finds that summary judgment is not proper on this basis.

### 2. Remaining Arguments

Defendant also points to several other reasons for the timing of its payment: (1) Brackett's failure to corroborate his future wage loss claim; (2) Brackett delayed selecting an arbitration date; and (3) Plaintiffs "ambush" of Defendants at the arbitration with new claims.

The Court finds that there are issues of triable fact as to each of these arguments. As to the argument regarding future wage loss, the Court discusses that more fully in the context of the General Dispute rule. As to the delay in seeking an arbitration date, the record supports Plaintiffs' contention that the selection of the arbitration date could have been the decision of all the parties, as opposed to being solely driven by the Plaintiffs. And as to the purported "ambush," it appears that Defendant had at least some notice of the loss of consortium claim, which was set out in the Demand for Arbitration letter sent to Defendants' counsel in August 2021, and of the need for surgery in the future, which was discussed in the medical records provided. Thus, none of these arguments compel granting summary judgment at this stage.

### B. Genuine Dispute Rule

Defendant also argues that summary judgment is proper because there was a genuine dispute regarding the value of Brackett's claim. As discussed above, the insurer's denial of or delay in paying benefit gives rise to tort damages only where the

---

*See* Cal. Ins. Code § 11580.2(p) ("If the provisions of this subdivision conflict with subdivisions (a) through (*o*), the provisions of this subdivision shall prevail.").

10

denial or delay was unreasonable. *Wilson,* 42 Cal. 4th at 723. Closely related to this principle is the genuine dispute doctrine. *See id.*

Under this doctrine "[a]n insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." *Chateau Chamberay,* 90 Cal. App. 4th at 347 (citation omitted). Even where benefits are due under the policy, withholding them is not bad faith if the insurer conducts a thorough and fair investigation, after which there remained a genuine dispute as to coverage liability. *Duncan,* 494 F. Supp. 3d at 753 (citation and quotation marks omitted). Essentially, a genuine dispute exists where the insurance company's position is maintained in good faith and predicated upon reasonable grounds. *Guebara v. Allstate Ins. Co.,* 237 F.3d 987, 992 (9th Cir. 2001). A dispute is legitimate if founded on a basis that is reasonable under all the circumstances. *Zubillaga v. Allstate Indemn. Co.,* 12 Cal. App. 5th 1017, 1028 (2017) (citation omitted). This rule applies to disputes over policy interpretation and factual disputes. *See id.*

The genuine dispute rule does not alter the summary judgment standard. *Id.* at 1027. Rather, a court may grant summary judgment only when "it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable – for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law." *Id*. On the other hand, an insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably. *Id.* One situation where a genuine coverage dispute could remain a jury question is where the insurer fails to conduct a thorough investigation. *See Guebara,* 237 F.3d at 996. Defendant provides posits three grounds on which a genuine dispute existed.

////

////

### 1. Independent Medical Experts

First, Defendant argues that a genuine dispute existed because it reasonably relied on medical expert opinion that Brackett recovered for the most part, did not require surgery and had not seen a doctor in years. As courts have found, genuine disputes exist where denial or delay of a claim were based on expert opinion. However, reliance on an expert "will not <u>automatically</u> insulate an insurer from a bad faith claim." *Chateau Chamberay,* 90 Cal. App. 4th at 349 (2001) (emphasis in original). For instance, where the insurer's experts were unreasonable, or the insurer failed to conduct a thorough investigation, a bad faith claim may go to a jury. *See id.* at 349–50 (describing circumstances where a "biased investigation" should go to a jury). Plaintiffs argue that Defendant's retained experts conducted an incomplete investigation, ignored the comprehensive analysis of Brackett's physicians and cherry-picked information.

Beginning with Dr. Mimran, a neurosurgeon retained by Defendant, the Court finds that a reasonable jury could conclude that his opinion was not thorough. Dr. Mimran never evaluated Brackett himself, and instead only reviewed his medical records. Nor did he provide any written report of his findings, and instead conveyed his opinion orally to Defendant's counsel. (Decl. of Jay Patterson ¶ 21.) At most, there appears to be a three-sentence summary of his assessment that there is no objective evidence of back or brain injuries and recommended neuropsychologist review. (ECF No. 23-7, Ex. 11 at 3.) Given the limited information at this stage regarding his assessment, it is unclear that Dr. Mimran's analysis contradicted Brackett's physician's assessments to the extent that a genuine dispute over the value of his claim arouse. *See Guebara*, 237 F.3d at 996 (finding that summary judgment was properly granted on plaintiff's bad faith claim where three independent experts provided valid reasons for denying a claim that was inconsistent with the plaintiff's explanation.)

Next, Defendant retained Dr. O'Grady, a board-certified neuropsychologist to

conduct an independent medical examination. Dr. O'Grady examined Brackett, reviewed his medical records, and prepared a report. Dr. O'Grady issued the following summary of major conclusions: Brackett probably suffered a concussion from the accident and likely musculoskeletal injuries, Brackett probably recovered quickly from the concussion, there was no evidence of neurocognitive impairment, the accident contributed to persistent depressive disorder, and it would be reasonable for Brackett to be offered additional mental health treatment. (*See* ECF No. 23-7, Ex. 10.) Unlike the assessment conducted by Dr. Mimran, the investigation here appears to be more thorough. Plaintiffs have not shown that any bias existed in Dr. O'Grady's report or testimony, and the mere fact that he was hired by the insurance company does not alone establish bias. *Bernstein v. Kemper Indep. Ins. Co.,* 670 F. Supp. 3d 1018, 1033 (E.D. Cal 2023) (collecting cases stating that the fact that doctors were hired by insurers rather than the insured does not support bias). Nevertheless, Dr. O'Grady's statements were limited to Brackett's psychological state as Dr. O'Grady is not a medical doctor, and thus could not provide expertise as to Brackett's head, shoulder, neck, back and shoulder injuries. Thus, the Court is not convinced that Dr. O'Grady's testimony, alone, would establish a genuine dispute over the value of Brackett's harm because there are many other aspects to his injuries. *See Wilson,* 42 Cal. 4th at 721–22 (explaining that where a jury could reasonably find that nothing in the material the claims examiner received justified certain conclusions, summary judgment was improper).

To the extent that Defendant relied on the expert opinions from the workers compensation claim, it is unclear whether Defendant gave fair weight to the facts provided in its valuation of Brackett's claim. While some of the reports show that Brackett could have worked under certain circumstances, Defendant had assessments discussing the implications of Brackett's lasting injuries that may cast doubt as to whether a genuine dispute actually existed. Moreover, "a trier of fact may find that an insurer acted unreasonably if the insurer ignores evidence available to it which

13

supports the claim," as the insurer "may not just focus on those acts which justify a denial of the claim." *Wilson,* 42 Cal. 4th at 721.  Given these issues, the Court finds that the independent medical expert testimony is not a basis on which a genuine dispute at to the value of the claim existed.

### 2.  Future Wage Loss

Second, Defendant argues that a genuine dispute existed because Brackett failed to corroborate his future wage loss.  In Brackett's March 2020 demand letter, he requested the full available policy amount without breaking down the costs.  (*See* ECF No. 23-7, Ex. 6 at 3.)  An insurer is entitled to corroborating proof of the extent of the claimant's injuries and medical expenses and need not base a settlement offer solely on the representations of the claimant and claimant's lawyer.  *Du v. Allstate Ins. Co.,* 697 F.3d 753, 759 (9th Cir. 2012).

Defendant rests its argument largely on the fact that Brackett was able to work and was working following the accident.  Thus, Defendant offered no future wage loss amount in its settlement offers and claims that it was not until the arbitration that Brackett introduced future loss of wage damages.  However, before the arbitration, Defendant had several important pieces of evidence in its possession.  First, by April 2022, Defendant had taken Brackett's deposition and had answers to several interrogatories regarding his work abilities in its possession.  His answers indicated that although Brackett was working, he was struggling to maintain his jobs due, in part, to his injuries.[4]  (ECF No. 23-7, Ex. 12.)  Second, Defendant had access to medical documents regarding Brackett's condition.  Defendant correctly notes that Brackett was able to work in some circumstances, however the Court agrees with Plaintiff that Defendant's portrayal of the facts is skewed.  For instance, Dr. Gupta stated that in the context of Brackett's headaches, he should not lift more than 30 pounds.  (ECF No. 23-

---

[4] Defendant contends that Plaintiff's failure to keep a job was due to intrapersonal disputes.  However, it appears that Defendant fails to consider the entirety of Brackett's statements, which also discuss how his injuries impacted his work ability.

14

7, Ex. 7 at 37–40.)  Defendant appears to have taken than finding, which is limited to the headache injury, and extrapolated it without any consideration of Brackett's other injuries.  Also, Defendant received the workers compensation Compromise and Release that Brackett was 45 percent permanently disabled from all future work following this accident. (ECF No. 23-7, Ex. 5 at 8.)  Taking these considerations together, it seems apparent from the information obtained before arbitration that a jury could find Defendant's failure to offer any future wage losses unreasonable.

Nevertheless, the Court recognizes that there may have been some new details that came out regarding Brackett's future work capabilities during arbitration.  For example, the testimony of Dr. Donthineni at the proceedings indicated that surgery may make Brackett's condition worse, thereby hindering his ability to work in the future. (ECF No. 24-3 at 6.)  However, given the breadth of information Defendant had at its disposal regarding his work abilities beforehand, the Court finds that it is not "indisputable" that a genuine dispute existed.

### 3. General Damages

Third, Defendant argues that a genuine dispute existed regarding the value of general damages.  "Translating pain and anguish into dollars can, at best, be only an arbitrary allowance, and not a process of measurement. . . ."  *Beagle v. Vasold,* 65 Cal. 2d 166, 172 (1966).  Here, Defendant argues that its valuation of $200,000 in Brackett's general damages was based on his injuries and ongoing pain, while also considering the fact that he had not been to a doctor in years, was mostly back to work and did not require surgery.  Plaintiffs argue that this amount is a "mockery" of Brackett's harm, as the evidence it had in its possession showed that he suffered from chronic pain, depression, daily headaches, difficulties with daily activities, sexual dysfunction, inability to sleep, memory and cognitive difficulties, financial troubles resulting in periods of homelessness from 2019 to 2021, and an end to his ten-year marriage.

Plaintiffs' frustration with Defendant's general damages does not automatically compel a denial of summary judgment. The amount awarded for general damages is "a matter on which there legitimately may be a wide difference of opinion" and "are inherently subject to genuine dispute," *Hovsepyan v. GEICO Gen. Ins. Co.,* 616 F. Supp. 3d 1057, 1067 (E.D. Cal. 2022) (citation and quotations omitted); *see also Holenda v. Infinity Select Ins. Co.,* No. 2:13-cv-07128-R-CW, 2014 WL 559381, at *4 (C.D. Cal. Feb. 13, 2014) (explaining that identifying a genuine dispute only requires a reasonable and legitimate difference in opinion, as which party is in fact "right" as to the disputed matter need not be decided). However, given that the basis on which Defendant made its general damages could be considered unreasonable, a jury might conclude that the Defendant acted unreasonably such that summary judgment on this basis is improper. *See Wilson,* 42 Cal. 4th at 723 (explaining that "an insurer's good or bad faith must be evaluated in light of the totality of the circumstances surrounding its action.").

### 4. Arbitration Award

Plaintiffs argue that the instant Motion should be denied based on the arbitration award because it illustrates the lack of any genuine dispute over the value of Brackett's claim. Defendant argues that the arbitrator's award is irrelevant because it was unknown at the time it evaluated the claim. Generally, the evaluation of an insurer's decision and actions must be evaluated as of the time they were made and cannot be made in light of subsequent events which was provide evidence of the insurer's errors. *Chateau Chamberay,* 90 Cal. App. 4th at 347.

To support their argument, Plaintiffs point to the fact that courts often hold that where a plaintiff's damages estimate is below what the arbitrator ultimately awards, as a matter of law, there is a genuine dispute regarding the claim value. *See, e.g.*, *Maynard v. State Farm Mut. Auto Ins. Co.*, 499 F. Supp. 2d 1154, 1162 (C.D. Cal 2007) (finding a genuine dispute, as a matter of law, where the discrepancy between plaintiff's claimed damages and his arbitration award was $414,000*); Rappaport-Scott*

*v. Interinsurance Exch. of the Auto. Club.,* 146 Cal. App. 4th 831, 839 (2007) (finding a genuine dispute, as a matter of law, due to the over $280,000 difference between plaintiff's damages claim and her determined award by the arbitrator). Plaintiffs argue that the opposite should be true here—because the arbitrator's award greatly exceeded the valuation of the claim, there is a lack of genuine dispute regarding plaintiff's damages. However, the Plaintiffs have not included, and the Court has not identified, any cases supporting the statement that as a matter of law, an arbitrator's larger award means that there was not a genuine dispute. Thus, the Court does not find that, as a matter of law, the difference in the arbitration amount shows that a genuine dispute did not exist.

## II.   Punitive Damages

"Under California law, punitive damages 'may be available in actions not arising from contract, where fraud, oppression or malice is proved.'" *Gaylord v. Nationwide Mut. Ins. Co.,* 776 F. Supp. 2d 1101, 1127 (E.D. Cal. 2011) (citations omitted). Plaintiff must prove fraud, oppression, or malice by "clear and convincing evidence." *Id.;* Cal. Civ. Code § 3294(a). In the insurance context, "an insurance company's breach of the duty of good faith and fair dealing must be coupled with clear and convincing evidence of malice, fraud, or oppression in order to justify punitive damages." *Gaylord,* 776 F. Supp. 2d at 1127 (citations omitted).

Defendant argues that regardless of the Court's ruling on the bad faith claim, summary judgment is proper as to punitive damages because Plaintiffs lack the necessary evidence to meet the high standard. Plaintiffs argue that summary judgment is improper because in the context of insurance bad faith, evidence of unreasonable delay in investigating or resolving a claim can itself be sufficient to support punitive damages. Given the discussion in the previous section, *supra* § I, the Court declines to grant summary judgment as to punitive damages. This is not to say that Plaintiffs will succeed. However, at this stage, there is enough evidence presented to suggest that Defendant failed to properly investigate Brackett's claim.

17

*See, e.g., Harbison v. American Motorists Ins. Co,* 636 F. Supp. 2d 1030, 1044–45 (E.D. Cal. 2009) (finding a triable issue of fact as to whether the insurer's denial of coverage based on an unreasonable investigation was in bad faith to the extent that its conduct constituted "despicable" "oppressive, fraudulent or malicious conduct") (collecting cases).  Thus, the Court declines to grant summary judgment on the issue of punitive damages.

## CONCLUSION

For the reasons discussed above the Court DENIES Defendant's Motion for Summary Judgment (ECF No. 23).

IT IS SO ORDERED.

Dated:  **May 30, 2025**

*(signature)*
Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC6 – BRACKETT23cv00555.msj